UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

KYLE STIFFARM,

        Plaintiff,

       v.

CITY OF PULLMAN POLICE DEPARTMENT
and ANDREW WILSON,

        Defendants.

NO. CV-04-0414-EFS

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT ANDREW WILSON'S MOTION FOR SUMMARY JUDGMENT RE: QUALIFIED IMMUNITY**

Before the Court, without oral argument, is Defendant Andrew Wilson's Motion for Summary Judgment Re: Qualified Immunity ("Motion") (Ct. Rec. 14). In his Motion, Defendant Wilson moves the Court for an Order finding he is entitled to (1) qualified immunity on each of Plaintiff Kyle Stiffarm's 42 U.S.C. § 1983 claims and (2) summary judgment on Plaintiff's punitive damage and state common law claims. After reviewing the submitted materials and relevant authority, the Court is fully informed and hereby grants in part and denies in part Defendant Wilson's Motion. For the reasons outlined below, Defendant Wilson is granted (1) qualified immunity on Plaintiff's substantive due process and equal protection claims and (2) summary judgment on Plaintiff's malicious prosecution and battery claims. In addition, the Court finds Defendant Wilson is not entitled to (1) qualified immunity on Plaintiff's right to

ORDER ~ 1

be informed of the nature and cause of the accusations, unlawful arrest, and excessive use of force claims, or (2) summary judgment on Plaintiff's punitive damage, false arrest, or false imprisonment claims.

## I. Background[1]

Plaintiff Kyle Stiffarm, a Native American and former Washington State University ("WSU") football player, returned to Pullman, Washington on September 7, 2002, to watch the opening game of the 2002 WSU football season with his parents. (Ct. Recs. 16 at 16-17 & 37 Ex. C.)  After attending the afternoon football game and having dinner with his parents, Plaintiff met up with a group of friends at an acquaintance's apartment and later went to The Cougar Cottage ("The Coug"), a small Pullman bar. *Id.* at 19-20.  While at The Coug for approximately one hour, Plaintiff drank one or two beers and claims that was the only alcohol he consumed during the evening in question. *Id.* at 20-21.

After leaving The Coug, Plaintiff stopped at a second acquaintance's house for approximately thirty minutes. *Id.* at 22-23.  After leaving, Plaintiff began walking towards the apartment he planned to stay at that night, which was located near several fraternities on the WSU campus. *Id.* at 23.  While walking towards the apartment, Plaintiff saw Scott Lunde, Curt Nettles, and Adam West, who were in a Isuzu Trooper outside of Shakers Bar. *Id.* at 23-26.  Mr. Lunde, Mr. Nettles, and Mr. West were all WSU football players at the time. *Id.* at 25.  The Trooper was owned by

---

[1] In ruling on a motion for summary judgment, the Court considers the facts and all reasonable inferences therefrom as contained in the submitted affidavits, declarations, exhibits, and depositions, in the light most favorable to the party opposing the motion. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1972) (*per curiam*).  The following factual recitation was created with this standard in mind.

ORDER ~ 2

Mr. Lunde, but was being driven by Mr. West when Plaintiff encountered the group. *Id.* at 26.

After seeing the group, Plaintiff asked for a ride to his destination, which was about a block and a half away from Shakers Bar. *Id.* The group agreed and Plaintiff got into the Trooper. *Id.* at 27. As they drove to the apartment, Mr. West sat in the driver's seat, Mr. Lunde sat in the front passenger's seat, and Mr. Nettles and Plaintiff shared the rear seat. *Id.* When they arrived at the apartment, Mr. West drove the Trooper into an alley where the apartment's entrance was located. *Id.* Once Plaintiff exited the Trooper, he and his friends were contacted by two women. *Id.* at 28-29. According to Plaintiff, one of the women attempted to introduce herself to him after he exited the Trooper and before he entered the apartment entrance. *Id.* at 29. Plaintiff believed the woman was between eighteen and twenty-two years old and likely Caucasian. *Id.* However, Plaintiff concedes it was dark, implying his perceptions of the woman's age and race may be inaccurate. *Id.* The woman who approached Plaintiff was later identified as Wendy Garcia.

At approximately 2:45 a.m., while on routine patrol, Officer Harris observed a group of men standing around a small car in an alley near the WSU campus fraternities. (Ct. Rec. 18 ¶ 2.) Officer Harris believed the men were "behaving very aggressively and shouting." *Id.* In response, Officer Harris exited the police vehicle he was a passenger in and ran to the scene. *Id.* As he got closer, Officer Harris saw Mr. Lunde pick up a sprinkler spraying water and shove it into the driver's side window of the small car and then pull it out. *Id.* Then, Officer Harris observed Ms. Garcia, who was the driver of the small car, rapidly back up the car

and nearly collide with Mr. Lunde. *Id.* Officer Harris requested an explanation of what was going on. *Id.* ¶ 3. Ms. Garcia reportedly responded that the men surrounding her car "were harassing her and would not leave her alone." *Id.* At that point, the men surrounding Ms. Garcia's car began fleeing the scene by running down the alley. *Id.* Officer Harris pursued the group on foot. *Id.*

Officer Harris eventually caught up with Mr. Lunde and discharged oleoresin capsicum spray ("pepper spray") in Mr. Lunde's face in the process of apprehending and placing him under arrest. *Id.* Once arrested, Mr. Lunde was escorted back down the alley by Officer Harris. *Id.* As Mr. Lunde was being walked down the alley, Defendant Wilson, who was also a City of Pullman Police Officer, assisted Officer Harris by placing handcuffs on Mr. Lunde. (Ct. Rec. 21 ¶ 9.) Then, Mr. Lunde was sat down and Officer Harris began flushing the pepper spray from Mr. Lunde's eyes with water from a hose. *Id.* When chasing Mr. Lunde, Officer Harris requested other officers to stop Ms. Garcia from leaving the scene and to place her under arrest for reckless driving. (Ct. Rec. 18 ¶ 3.) Ms. Garcia was subsequently arrested and taken to the City of Pullman Police Station, where she was interviewed by Officer Harris. *Id.*

During her interview, Officer Harris claims Ms. Garcia provided the following version of events. After introducing herself to Plaintiff, Ms. Garcia began speaking with Mr. Nettles, who was still seated in the backseat of the Trooper. *Id.* ¶ 4. While Ms. Garcia was speaking with Mr. Nettles, the two shook hands and while doing so, Mr. Nettles grabbed her arm and refused to let go. *Id.* While Mr. Nettles was holding Ms. Garcia's arm, the Trooper began driving down the alley, dragging Ms.

ORDER ~ 4

Garcia on the ground along the way. *Id.* When the Trooper eventually stopped, Ms. Garcia was dropped to the ground. *Id.* Once she was free, Ms. Garcia ran back to her car, with Mr. Lunde and the other men from the Trooper chasing after her. *Id.* Once she was in her car, Officer Harris claims Ms. Garcia told him that Mr. Nettles opened her passenger side door and that Mr. Lunde and Plaintiff reached through the driver's side door in an attempt to grab her. *Id.* Ms. Garcia then purportedly attempted to drive away out of fear of being assaulted. *Id.* During her attempt to drive away, Ms. Garcia rapidly backed her vehicle up in such a way that Mr. Lunde was almost hit.[2] *Id.* ¶ 2. Plaintiff denies any involvement in or personal knowledge of the alleged harassment and/or assault of Ms. Garcia on September 7-8, 2006. (Ct. Rec. 31 ¶ 2-3.)

Once Mr. Lunde was seated, Defendant Wilson was approached by Troy Guilford, who indicated he was a witness to what Mr. Lunde "had been doing all evening." (Ct. Rec. 21 ¶ 10.) In response, Defendant Wilson walked Mr. Guilford away from Mr. Lunde and towards Defendant Wilson's patrol car and began interviewing him. *Id.* In the course of his interview, Mr. Guilford explained that Mr. Lunde and a group of other men had been "harassing females all over Greek Row" that night." *Id.* ¶ 11.

While Officer Harris was attending to Mr. Lunde and Officer Wilson was interviewing Mr. Guilford, Police Officer Joe Ederer of the Washington State University Police Department arrived at the scene. (Ct. Rec. 20 ¶ 3.) Shortly thereafter, Officer Ederer claims to have observed

---

[2] The remaining account of events is based on direct statements provided by Plaintiff and several police officers who were present in the alley in the early hours of September 8, 2002.

ORDER ~ 5

Plaintiff approach Officer Harris and begin speaking to him. *Id.* According to Officer Ederer, Plaintiff's demeanor and closeness caused him to be concerned for Officer Harris' safety. *Id.* For that reason, Officer Ederer stepped between Plaintiff and Officer Harris and asked Plaintiff to back up. *Id.* Then, according to Officer Ederer, Plaintiff questioned why he had to move and indicated he would not move despite Officer Ederer's instruction to do so. *Id.* In response, Officer Ederer claims to have employed a pain compliance technique known as a "gooseneck" on Plaintiff's wrist and escorted him away from Officer Harris' and Mr. Lunde's position. *Id.* Officer Wilson claims to have observed Officer Ederer use of the pain compliance technique on Plaintiff and saw Plaintiff being escorted away from Officer Harris. (Ct. Rec. 21 ¶ 13.) Then, according to Officer Ederer and Defendant Wilson, Plaintiff was left by Officer Ederer approximately ten feet away from where Defendant Wilson was interviewing Mr. Guilford and told to stay back and let the officers "do their job." *Id.* Officer Ederer was then allegedly asked by Officer Harris to take over the responsibilities of flushing the pepper spray from Mr. Lunde's eyes. (Ct. Rec. 20 ¶ 4.) Plaintiff denies that Officer Ederer ever spoke to him, told him to "stay back," or used any "'pain compliance' or other hold" on him prior to his arrest later that night. (Ct. Rec. 31 ¶ 4.)

While Officer Ederer was attending to Mr. Lunde, Plaintiff began walking towards Defendant Wilson and Mr. Guilford. (Ct. Rec. 21 ¶ 15.) As Plaintiff approached, Mr. Guilford informed Defendant Wilson that he thought Plaintiff had been with Mr. Lunde, but that Mr. Guilford did not believe Plaintiff had done anything wrong. *Id.* At that point, Defendant

Wilson alleges to have told Plaintiff to stop, back up, and wait where Officer Ederer had allegedly left him. *Id.* Defendant Wilson then claims Plaintiff told him he needed to talk with Defendant Wilson about Mr. Lunde and continued to approach. *Id.* ¶ 16.  In response, Defendant Wilson claims he explained to Plaintiff that he was currently speaking with Mr. Guilford, but would speak with Plaintiff when he was done and again asked Plaintiff to step back. *Id.*  According to Defendant Wilson, Plaintiff disregarded the instruction to stay away and continued approaching Defendant Wilson's position. *Id.*  At that point, Defendant Wilson claims to have asked Plaintiff to back up again and told Plaintiff he was disrupting his investigation and that if Plaintiff did not stay back he would be arrested for obstruction. *Id.* ¶ 17-18.  In addition, as Plaintiff got closer, Defendant Wilson alleges to have smelled the "odor of intoxicants" coming from Plaintiff and states that he assumed Plaintiff was intoxicated. *Id.* ¶ 18.

As Plaintiff approached, Defendant Wilson claims Plaintiff insisted it was his "right" to speak to and stand by Defendant Wilson. *Id.* at 18-19.  After a final warning that Plaintiff would be arrested for obstruction if he did not back up, Defendant Wilson explains how he placed both of his hands on Plaintiff's chest and "pushed slightly, to get a sense of resistance" and that after Plaintiff refused to back up, Defendant Wilson grabbed Plaintiff's wrist and informed Plaintiff he was under arrest for obstruction. *Id.* ¶ 19-20.  Defendant Wilson then claims to have told Plaintiff to put his hands behind his back and that Plaintiff refused, stating that he was not going to do anything Defendant Wilson told him to do. *Id.* ¶ 20.

ORDER ~ 7

Then, due to Plaintiff's alleged refusal to comply with Defendant Wilson's verbal commands, combined with Plaintiff's physical resistance, Defendant Wilson explains that he believed the use of pepper spray on Plaintiff was reasonable and necessary. *Id.* ¶ 21.  For those reasons, Defendant Wilson discharged pepper spray in Plaintiff's face. *Id.* Plaintiff then crouched over, but allegedly refused to go to the ground as instructed by Defendant Wilson. *Id.*  Defendant Wilson then claims to have attempted to use an arm bar to take Plaintiff to the ground, but that due to Plaintiff's strength, the arm bar was ineffective. *Id.*  For this reason and because Defendant refused Defendant Wilson's oral command to go to the ground, Defendant Wilson used his leg to trip Plaintiff to the ground. *Id.* ¶ 22.  Once on the ground, Plaintiff allegedly got on to his hands and knees and again refused Defendant Wilson's oral command to stay on the ground. *Id.*  In response, Defendant Wilson forced Plaintiff to the ground again while yelling at Plaintiff to "Stop Fighting!" *Id.* Once Plaintiff was on the ground, Officer Ederer assisted Defendant Wilson by handcuffing Plaintiff. *Id.* at ¶ 23.

Plaintiff denies the version of events presented by Defendant Wilson relating to his arrest.  Specifically, Plaintiff (1) disagrees with Defendant Wilson's assertion that Plaintiff said he would not comply with any command Defendant Wilson made, (2) claims to have complied will all oral commands given by Defendant Wilson prior to or after being pepper sprayed and (3) claims he did not resist Defendant Wilson's efforts to arrest him. (Ct. Rec. 31 ¶ 5-6.)  Instead, Plaintiff alleges he was assaulted and unlawfully arrested by Defendant Wilson after he walked towards Defendant Wilson in an effort to offer assistance. (Ct. Rec. 33

Ex. E at 52.)   In support of his version of events, Plaintiff offers a written complaint to the City of Pullman by Mr. Guilford that purports to describe Defendant Wilson's treatment of Plaintiff:

> A. Wilson was speaking to me [ ] about what occured (sic). Kyle Stiffarm approached both A. Wilson and myself. A. Wilson asked Kyle to stand aside. Then asked me to stand aside. A. Wilson sprayed Kyle in the face. Then took him to the ground. Pushing his face into the gravel. He was never read his rights. A. Wilson was on a power trip. This is not the law and police do no have the right to treat students in this way.

*Id.* at Ex. D.

Once handcuffed, Plaintiff was placed in the back of Defendant Wilson's patrol car and told he was under arrest for obstructing a public servant and resisting arrest. (Ct. Rec. 21 ¶ 23.)   Plaintiff was then transported to the police station, arriving at 3:04 a.m. *Id.* ¶ 24.   Once Plaintiff arrived at the police station, the pepper spray was flushed from his eyes. *Id.*   In addition, after Plaintiff was processed, Defendant Wilson issued Plaintiff Citation #C 6340. *Id.* ¶ 25.   In the section of the citation used to describe Plaintiff's violations, Defendant Wilson wrote (1) "9A.76.020(3)" and "Obstructing an Officer" and (2) "9A.76.040(1)" and "Resisting Arrest." (Ct. Rec. 1 Ex. A.)   After the citation was issued, Plaintiff was released from custody. (Ct. Rec. 21 ¶ 25.)

In late November 2002, the Whitman County deputy prosecuting attorney assigned to handle the charges asserted in Plaintiff's September 8, 2002, citation, reached a tentative plea agreement with Plaintiff's criminal defense attorney. (Ct. Rec. 17 ¶ 3.)   According to the plea agreement, the deputy prosecuting attorney agreed to a "Continuance for

ORDER ~ 9

Dismissal" ("CFD") for six months on the obstruction charge[3] if Plaintiff agreed to waive his right to a jury trial, stipulate to the police report, maintain law abiding behavior, pay court costs and/or perform community service. *Id.* ¶ 4.  Based on the plea agreement, an Order of Continuance for Dismissal was prepared by the prosecutor and set for hearing on December 20, 2002. *Id.* ¶ 6.  However, prior to the December 20, 2002, hearing, Plaintiff decided he no longer wished to enter the plea agreement and elected to have the obstruction charge heard before a judge in a January 26, 2003, bench trial. *Id.*

On November 25, 2002, Defendant's criminal defense attorney filed a trial brief that addressed both offenses. *Id.* ¶ 9.  The trial brief dedicated one sentence to the issue of whether Defendant Wilson had probable cause to arrest Plaintiff for obstruction. *Id.*  Specifically, defense counsel wrote: "And, of course, we argue that there was no probable cause for the arrest in the first place." *Id.*  No authority or

---

[3] A CFD is a contract between the State and a defendant in which the State agrees to continue a criminal charge in exchange for the defendant's agreement to (1) stipulate to the police report, (2) waive his or her right to a jury trial and a speedy trial claim for a specified period of time, (3) maintain law abiding behavior, and (4) sometimes pay a fine and/or perform community service and/or pay restitution and/or participate in counseling. (Ct. Rec. 17 ¶ 3.)  If the defendant successfully completes the terms the conditions of his or her CFD, the underlying charge is dismissed. *Id.*

ORDER ~ 10

factual recitation was provided to support this claim. *Id.* Furthermore, nowhere in the trial brief did defense counsel raise the Sixth Amendment constitutional issue addressed below or cite to *City of Auburn v. Brooke*, 119 Wash. 2d 623 (1992).[4] *Id.* On November 26, 2002, the deputy prosecuting attorney moved the court to dismiss the resisting arrest charge, listing "insufficient evidence" as the reasons for the dismissal. (Ct. Rec. 1 Ex. C.) This request was granted on December 2, 2002. *Id.*

At trial, Plaintiff argued he was arrested because he is Native American. *Id.* ¶ 10. At the conclusion of the trial, the presiding judge acquitted Plaintiff of the obstruction charge. (Ct. Rec. 1 Ex. B.) In a declaration by the presiding judge, now submitted by Defendant Wilson, the presiding judge explains that he believed Plaintiff obstructed Defendant Wilson's investigation, but that he did not believe the State had proven beyond a reasonable doubt that Plaintiff had intended to cause the obstruction. (Ct. Rec. 19 ¶ 4.) In addition, the presiding judge explains that his decision was not based on a finding that probable cause did not exist to arrest. *Id.* Instead, the presiding judge explains that he concluded, based on the evidence produced at trial, that probable cause did exist for Officer Wilson to arrest Plaintiff. *Id.* Furthermore, the presiding judge indicates that he rejected Plaintiff's argument that he was arrested and prosecuted because of his race. *Id.* ¶ 5.

The same deputy prosecuting attorney assigned to Plaintiff's case was also assigned the duty of determining whether Mr. Lunde was to be

---

[4] Defense counsel did not raise Sixth Amendment concerns addressed in this Order prior to, during, or after Defendant's trial on the obstruction charge either.

charged with harassing and/or assaulting Ms. Garcia. (Ct. Rec. 17 ¶ 11.) After considering the available evidence, the deputy prosecuting attorney declined to file charges against Mr. Lunde. *Id.* ¶ 12. According to the deputy prosecuting attorney, this decision was primarily based on her inability to locate the victim, Ms. Garcia. *Id.* In addition, the deputy prosecuting attorney declined to file charges against Ms. Garcia because she believed Ms. Garcia was being victimized and drove recklessly only to avoid a possible assault. *Id.* ¶ 13.

On November 5, 2004, Plaintiff filed suit against Defendants Wilson and the City of Pullman Police Department alleging federal claims under 42 U.S.C. § 1983 and related Washington State common law claims. Defendant Wilson now moves the Court for qualified immunity on Plaintiff's federal claims and summary judgment on Plaintiff's state claims. For the reasons provided below, these requests are granted in part and denied in part.

## II. Summary Judgment Standard

Summary judgment will be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). When considering a motion for summary judgment, a court may not weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A genuine issue for trial exists only if "the evidence is such that a reasonable jury could

return a verdict" for the party opposing summary judgment. *Id*. at 248. In other words, issues of fact are not material and do not preclude summary judgment unless they "might affect the outcome of the suit under the governing law." *Id*.  There is no genuine issue for trial if the evidence favoring the non-movant is "merely colorable" or "not significantly probative." *Id.* at 249.

If the party requesting summary judgment demonstrates the absence of a genuine material fact, the party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial" or judgment may be granted as a matter of law. *Anderson*, 477 U.S. at 248. This requires the party opposing summary judgment to present or identify in the record evidence sufficient to establish the existence of any challenged element that is essential to that party's case and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Failure to contradict the moving party's facts with counter affidavits or other responsive materials may result in the entry of summary judgment if the party requesting summary judgment is otherwise entitled to judgment as a matter of law. *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996).

### III. Analysis

Qualified immunity shields government officials, including police officers, who are performing discretionary functions "from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982);

*Harris v. City of Roseburg*, 664 F.2d 1121, 1127 (9th Cir. 1981) (extending the privilege of qualified immunity to police officers). "When confronted with a claim of qualified immunity, a court must ask first the following question: 'Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?'" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.*

"On the other hand, if a violation could be made out [under the first inquiry] on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. Under this standard, if a law does not put an "officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate" for those claims stemming from violations of that law. *Id.* In other words, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

In addition, an officer is immune from suit even when he makes a constitutionally deficient decision, if he reasonably misapprehended the law governing the circumstances he confronted. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (citing *Saucier*, 533 U.S. at 206). This exception

is premised on the fact that it is sometimes difficult for an officer to determine how a particular legal doctrine applies to the factual situation he faces. *Saucier*, 533 U.S. at 205.  In these situations, if "the officer's mistake as to what the law requires is reasonable, [] the officer is entitled to the immunity defense." *Id.*  As a result of the above-described standards, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

**A. Right to be Informed of the Nature and Cause of the Accusations Claim**

Plaintiff claims that under the Sixth and Fourteenth Amendments to the United States Constitution, he had the right to be informed of the nature and cause of the accusations brought against him when he was charged with obstruction and resisting arrest, and that his Sixth Amendment right was violated because the citation Defendant Wilson issued to Plaintiff did not set forth all of the necessary elements of the obstruction and resisting arrest charges.

The Sixth Amendment states in part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." U.S. Const. amend. VI ("Right to Be Informed"). When an indictment is used to charge a crime, the defendant's Right to Be Informed is guaranteed if the indictment "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend[.]" *United States v. Hill*, 279 F.3d 731, 741 (9th Cir. 2002) (citing *Hamling v. United States*, 418 U.S. 87, 117 (1974)).

In Washington,

[w]henever a person is arrested or could have been arrested
    pursuant to a statute for a violation of law which is

> punishable as a misdemeanor or gross misdemeanor the arresting
> officer . . . may serve upon the person a citation and notice
> to appear in court.

CrRLJ 2.1(b)(1).  "When signed by the citing officer and filed with a court of competent jurisdiction, the citation and notice shall be deemed a lawful complaint for the purpose of initiating prosecution of the offense charged therein." CrRLJ 2.1(b)(16).  Thus, in Washington, to ensure a defendant's Sixth Amendment Right to be Informed is afforded when a citation and notice are used as the final charging documents under CrRLJ 2.1(b)(1), they must set forth the elements of the offenses being charged in the citation. *See Hill*, 279 F.3d at 741; *City of Auburn v. Brooke*, 119 Wash. 2d 623, 629 (1992).

In his Motion, Defendant Wilson seeks qualified immunity on Plaintiff's claim that his Right to be Informed was violated by the purportedly insufficient citation issued by Defendant Wilson.  The Court rejects Defendant Wilson's arguments and finds he is not entitled to qualified immunity on Plaintiff's Right to be Informed claim.

Because Defendant Wilson did not include each of the necessary elements of the offenses being charged in the citation, but instead, merely listed the crimes' titles, i.e. "Obstructing an Officer" and "Resisting Arrest," and statutory codes, the Court finds Plaintiff is able to prove his Right to be Informed was violated. See *Hill*, 279 F.3d at 741; *City of Auburn v. Brooke*, 119 Wash. 2d 623, 629 (1992).  Although Defendant Wilson claims Plaintiff must prove he was prejudiced by the failure to list the necessary elements on the citation to maintain this cause of action under 42 U.S.C. 1983, he cites no authority confirming this position.  Instead, Defendant Wilson exclusively relies on

ORDER ~ 16

Washington cases arising in criminal contexts and none addressing the issue of prejudice in the § 1983 setting.  Based on the distinguishable nature of the criminal cases and the lack of otherwise supporting authority, this argument is rejected. *See generally Farrar v. Hobby*, 506 U.S. 103 (1992) (nominal damages available in § 1983 cases involving procedural due process violations even if compensatory damages have not be proven).

Because the Court has found Plaintiff is capable of proving his Sixth Amendment Right to be Informed, the Court addresses the second qualified immunity inquiry, i.e. whether the constitutional right was "clearly established."  Because *Hamling* and *Brooke*, cases that were each over ten years old when Plaintiff's citation was written, set forth clear and unambiguous guidelines on what the Sixth Amendment requires a charging document to include, the Court finds a reasonable officer in Defendant Wilson's position would have understood his failure to include the elements of the offenses on the citation violated Plaintiff's Right to be Informed.  For this reason, the Court concludes Plaintiff's Sixth Amendment right was clearly established and Defendant Wilson is not entitled to qualified immunity on this claim.

Furthermore, the Court rejects Defendant Wilson's claim he is entitled to absolute prosecutorial immunity.  Defendant Wilson cites no case that extends a prosecutor's absolute immunity for charging decisions to law enforcement officers.  Due to the unique differences between these roles, the Court declines to extend absolute prosecutorial immunity to Defendant Wilson in this instance.

///

ORDER ~ 17

**B. Deliberate Indifference to Serious Medical Needs Claim**

In his Complaint, Plaintiff alleges his rights under the Fourth and Fourteenth Amendments were violated because he was denied "necessary medical treatment while in custody." (Ct. Rec. 1 ¶ XXI(d).)  In his Motion, Defendant Wilson construes this cause of action as one alleging he is liable for acting with deliberate indifference to a serious medical needs of Plaintiff, i.e. not flushing the pepper spray from Plaintiff's eyes prior to transporting him to the police station. (Ct. Rec. 14 at 11-15.)  In response to Defendant's Motion, Plaintiff informs the Court that he is not pursuing a "deliberate indifference to a serious medical need claim." (Ct. Rec. 29 at 6.)  Instead, Plaintiff explains that the allegation contained in paragraph XXI(c) of his Complaint is an excessive use of force claim and should not be analyzed as a deliberate indifference claim. *Id.*

Because Plaintiff concedes he is not asserting a deliberate indifference to serious medical needs claim, the Court denies as moot this portion of Defendant Wilson's Motion.  Furthermore, the claim alleged in paragraph XXI(d) is construed as a second excessive use of force allegation and will be reviewed as such in a subsequent section of this Order when the express allegation of excessive use of force claim contained in paragraph XXI(c) is considered.

**C. Unlawful Arrest Claim**

Plaintiff claims his Fourth and Fourteenth Amendment rights were violated when he was arrested by Defendant Wilson because, as he argues, Defendant Wilson did not have probable cause to make the arrest. (Ct. Rec. 29 at 7-9.)  In response, Defendant Wilson argues that probable

cause, or at least "arguable probable cause," existed to arrest Plaintiff, and for that reason, Plaintiff's arrest was not in violation of the Fourth or Fourteenth Amendments.

The Fourth Amendment guarantees citizens the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV.  This includes the right to be free from unreasonable arrests. *U.S. v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975).  A warrantless arrest is unreasonable under the Fourth Amendment if it is made without probable cause. *Mackinney v. Nielson*, 69 F.3d 1002, 1005 (9th Cir. 1995). "Probable cause exists when 'the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a prudent person to believe that a suspect has committed, is committing, or is about to commit a crime." *Id.* (quoting *United States v. Hoyos*, 892 F.2d 1387, 1392 (9th Cir. 1989), *cert. denied*, 498 U.S. 825 (1990) (citation omitted)).

Based on the submitted record, the Court finds a material issue of fact exists regarding whether Defendant Wilson had probable cause to arrest Plaintiff.  On one hand, Plaintiff explains that he was arrested for obstruction after simply walking toward Defendant Wilson and innocuously interrupting the officer's interview of Mr. Guilford. Furthermore, Plaintiff asserts that he was never asked to step back or not approach.  Similarly, Plaintiff claims he was never warned that he would be arrested if he continued approaching.  Under this version of events, the Court believes no reasonable officer in Defendant Wilson's position would have believed Plaintiff had committed, was committing, or

was about to commit a crime.  Thus, probable cause would not have existed to make the warrantless arrest of Plaintiff. *Id.*

However, on the other hand, Defendant Wilson explains that Plaintiff was asked to stay back several times and threatened with arrest if he did not comply.  If Defendant Wilson's version of events is true, the Court believes probable cause to arrest Plaintiff for obstruction did exist, since a reasonable officer in Defendant Wilson's position would have believed Plaintiff was committing a crime, namely Obstructing a Law Enforcement Officer, R.C.W. § 9A.76.020, which only requires a showing that a person wilfully hindered, delayed, or obstructed a law enforcement officer in the discharge of his or her official duties.  Due to the conflict between the parties' version of events and because the Court must consider the presented evidence in the light most favorable to Plaintiff, as the nonmoving party and person against whom qualified immunity is being sought, the Court denies Defendant Wilson's request for summary judgment on this issue.

In addition, the Court denies Defendant Wilson's request for summary judgment on the theory of "arguable probable cause."  Under the theory of "arguable probable cause," an officer is immune from liability on a claim of unlawful arrest even if he mistakenly arrested a suspect without probable cause if the circumstances and particularized information known to the officer caused him to reasonably believe probable cause existed to make the arrest. *Anderson v. Creghton*, 483 U.S. 635 (1987); *Burrell v. McIlroy*, 423 F.3d 1121 (9th Cir. 2005).  This theory of immunity is designed to protect officers from liability when they are called upon to make split-second decisions under unclear and rapidly evolving

ORDER ~ 20

circumstances.  In this case, the crime scene had settled and no other suspects were actively being pursued.  In addition, no threats, aside from the darkness of the early morning hour, existed to justify lowering the probable cause standard for arresting Plaintiff, e.g. no additional suspects were running though the area, no threats of violence had been made against the officers at the scene, no weapons had been brandished, etc.  Thus, the Court finds the circumstances faced by Defendant Wilson were not sufficiently unclear or rapidly evolving that the "arguable probable cause" standard should be applied and the Motion is denied to this extent.  Accordingly, Defendant Wilson's request for qualified immunity on this claim is denied.

**D. Excessive Use of Force Claim**

Plaintiff claims his Fourth and Fourteenth Amendment rights to be free from the excessive use of force by government officials were violated when Defendant Wilson discharged pepper spray in his face and then again when Defendant Wilson waited to flush the pepper spray from Plaintiff's eyes until they arrived at the police station. (Ct. Recs. 1 ¶ XXI(c)-(d) & 29 at 6-7.)  Defendant Wilson denies Plaintiff's excessive use of force claims by arguing that his use and delayed flushing of the pepper spray was reasonable under the circumstances.

"Under the Fourth Amendment, officers may only use such force as is 'objectively reasonable' under the circumstances." *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)).  "To determine whether the force used was reasonable, courts balance 'the nature and quality of the intrusion on the individual's Fourth Amendment interest against the countervailing governmental

interests at stake.'" *Id.* (citing *Graham*, 490 U.S. at 396). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)). Additionally, a consideration of "reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." *Id.* at 396-97. Accordingly, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers' violates the Fourth Amendment." *Id.* at 396. "While the test for reasonableness is often a question for the jury, this issue may be decided as a matter of law if, in resolving all factual disputes in favor of the plaintiff, the officer's force was 'objectively reasonable' under the circumstances." *Jackson*, 268 F.3d at 651 n.1.

## 1. Use of Pepper Spray

When the disputed facts are considered in the light most favorable to Plaintiff, the Court concludes that a reasonable jury could find Defendant Wilson's use of pepper spray was in violation of Plaintiff's Fourth Amendment rights. According to Plaintiff, pepper spray was discharged in his face after he walked toward Defendant Wilson and offered his assistance in the investigation of Mr. Lunde. Contrary to Defendant Wilson's version of events, Plaintiff claims to have complied with all commands made by Defendant Wilson prior to being pepper sprayed and denies stating that he would not follow Defendant Wilson's orders.

1  (Ct. Rec. 31 ¶ 6.)  In addition, Plaintiff denies being escorted away

2  from Officer Harris by Officer Ederer prior to approaching Defendant

3  Wilson. *Id.* ¶ 4.  Thus, Defendant Wilson's assertions that Plaintiff (1)

4  repeatedly refused to retreat when Defendant Wilson asked to do so, (2)

5  expressly refused to comply with Defendant Wilson's future orders, (3)

6  had previously been escorted, with the use of pain compliance technique,

7  by Officer Ederer away from Officer Harris, and (4) refused to place his

8  arms behind his back when placed under arrest are in dispute and must be

9  resolved in Plaintiff's favor for the purposes of considering Defendant

10 Wilson's Motion. *See Saucier v. Katz*, 533 U.S. at 201 ("Taken in the

11 light most favorable to the party asserting the injury, do the facts

12 alleged show the officer's conduct violated a constitutional right?").

13     Accordingly, when Defendant Wilson sprayed pepper spray in

14 Plaintiff's face, the Court finds a reasonable officer in Defendant

15 Wilson's position would have been aware of the following circumstances:

16 (1) the crime scene had settled to the point where Mr. Lunde, who had

17 been already been disabled with a separate discharge of pepper spray, was

18 in custody, handcuffed, and having his eyes flushed with water; (2) no

19 additional suspects were being pursued, evidenced by the fact that

20 Defendant Wilson had time to interview Mr. Guilford and Officer Harris

21 had time to flush Mr. Lunde's eyes with water; (3) Defendant Wilson had

22 not been threatened with injury by anyone currently or previously on the

23 scene and had not been told that other officers had been threatened with

24 injury; (4) Defendant Wilson had not seen any weapons, aside from those

25 possessed by the officers, at the scene and had not been told by anyone

26 else that weapons were or had been present; (5) Plaintiff had not been

ORDER ~ 23

1  warned to stay away or threatened with arrest or the use of pepper spray
2  if he did not stay away from Defendant Wilson's position; (6) Plaintiff
3  did not rush towards Defendant Wilson, but instead walked towards
4  Defendant Wilson to offer his assistance; and (7) Plaintiff was not
5  obstinate toward's Defendant Wilson's commands and did not resist
6  Defendant Wilson's attempt to arrest him.

7      Even though Defendant Wilson had only recently arrived at the scene
8  and it was presumably dark at the time of the incident, based on
9  Plaintiff's version of events and what a reasonable officer in Defendant
10 Wilson's position would have known under that version of events, the
11 Court concludes that a reasonable jury could find that the discharge of
12 pepper spray in Plaintiff's face was an excessive use of force under the
13 circumstances.

14     Because the Court concludes the alleged facts support this
15 constitutional claim, the Court now considers whether, at the time
16 Plaintiff was pepper sprayed, it would have been clear to a reasonable
17 officer that such conduct was unlawful in the situation. *See Saucier*, 533
18 U.S. at 201.  In *Headwaters Forest Defense v. County of Humboldt*, 276
19 F.3d 1125 (9th Cir. 2002), the Ninth Circuit addressed a pepper spray
20 issue factually similar to that which is found in this case, which is
21 helpful to the Court's consideration of whether Plaintiff's claimed right
22 was clearly established when he was pepper sprayed.

23     In *Headwaters Forest Defense*, a group of nine environmental
24 protestors sued several law enforcement officers who discharged pepper
25 spray in their faces during a series of protests in which they were
26 linked together by self-releasing, lock-down devices. *Id.* at 1127.

During these protests, the officers used pepper spray on protestors who refused to unlink themselves, despite the fact that the protests were always peaceful, the protestors could be removed from a site while linked, and the officers had experience removing the lock-down devices without harming anyone. *Id.* at 1128.  The pepper spray was used in an attempt to expedite the removal of the protestors by getting them to voluntarily unlink themselves in an effort to obtain water to flush their eyes. *Id.*

The Ninth Circuit ultimately concluded that "it would be clear to a reasonable officer that using pepper spray against the protestors was excessive under the circumstances." *Id.* at 1130.  Quoting a prior decision, the court reemphasized the point that "pepper spray 'may be reasonable as a general policy to bring an arrestee under control . . . .'" *Id.* (quoting *LaLonde v. County of Riverside*, 204 F.3d 947, 961 (9th Cir. 2000).  Because the officers had control over the protestors, the Ninth Circuit concluded it would have been clear to any reasonable officer that is was unnecessary to use pepper spray against the protesters. *Id.*  In addition, the court relied on the fact that regional and California state police protocol "clearly suggest that using pepper spray against nonviolent protestors is excessive." *Id.* at 1131.  In sum, the Ninth Circuit held:

> The law regarding a police officer's use of force against a passive individual was sufficiently clear at the time of the events at issue in th[e] case that the defendants cannot claim qualified immunity on the ground that they made a reasonable mistake of law.

*Id.* (citing *Saucier*, 533 U.S. at 201).

ORDER ~ 25

As was the case in *Headwaters Forest Defense*, under Plaintiff's version of events, Defendant Wilson used pepper spray on a passive and peaceful individual who did not need to be taken into control. Because Plaintiff claims to have obeyed all requests made by Defendant Wilson and not presented any more of a threat to Defendant Wilson than a common pedestrian passing by the crime scene or a witness alleging to have relevant information, such as Mr. Guilford, Defendant Wilson's use of pepper spray was undoubtedly more than necessary to ensure Plaintiff did not disrupt his investigation. This is especially true in light of Plaintiff's assertion that he was not asked to stop or warned that pepper spray would be used against him if he continued advancing. Thus, the Court finds a reasonable officer in Defendant Wilson's position would have known, under Plaintiff's version of events, that discharging pepper spray in Plaintiff's face was an excessive use of force and an unlawful act. For this reason, the Court denies Defendant Wilson's request for qualified immunity on this claim.

### 2. Delayed Flushing of the Pepper Spray

In addition to his claim that the *use* of pepper spray was an excessive use of force, Plaintiff also claims Defendant Wilson's decision to not immediately *flush the pepper spray from his eyes* was also an excessive use of force. Defendant Wilson seeks qualified immunity on this claim as well.

In *LaLonde v. County of Riverside*, the Ninth Circuit stated:

> In the context of police canines, this court has explained that "no particularized case law is necessary for a deputy to know that excessive force has been used when a deputy sics a canine on a handcuffed arrestee who has fully surrendered and is completely under control." The same principle is applicable to the use of pepper spray as a weapon: the use of such weapons

ORDER ~ 26

(e.g., pepper sprays; police dogs) may be reasonable as a general policy to bring an arrestee under control, but in a situation in which an arrestee surrenders and is rendered helpless, any reasonable officer would know that a continued use of the weapon or a refusal without cause to alleviate its harmful effects constitutes excessive force.

204 F.3d 947, 960-61 (9th Cir. 2000)(internal citations omitted).

Based on the Ninth Circuit's analysis in *LaLonde*, the Court concludes a reasonable jury could find Defendant Wilson's decision to not flush Plaintiff's eyes at the scene, when a hose with running water was readily available and after Plaintiff was placed in handcuffs, was an excessive use of force and that a reasonable officer would have known the refusal to flush Plaintiff's eyes was an unconstitutional excessive use of force.  For this reason, the Court finds Defendant Wilson is not entitled to qualified immunity on this claim even though Plaintiff's eyes were flushed shortly after he arrived at the police station.

**E. Substantive Due Process & Equal Protection Claims**

In his Complaint, Plaintiff broadly asserts that his Fourteenth Amendment right to not be deprived of life, liberty, or property without due process, and right to the equal protection of the laws were violated by Defendants. (Ct. Rec. 1 ¶ XXI(e).)  Defendant Wilson challenges these separate claims in his Motion.

**1. Substantive Due Process**

Plaintiff asserts that § 1983 claims arising "prior to arrest are analyzed under the Fourteenth Amendment substantive due process analysis." (Ct. Rec. 29 at 13.)  Plaintiff then explains that because Plaintiff was pepper sprayed prior to being arrested, Plaintiff's Fourteenth Amendment substantive due process rights are implicated. *Id.* In the course of making this argument, Plaintiff does not explain why he

has also argues his Fourth Amendment rights were violated by the same pepper spraying conduct.

In *Graham v. Connor*, the Supreme Court addressed the precise issue raised by Plaintiff in this instance, when it stated

> that *all* claims that law enforcement officers have used excessive force - deadly or not - in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard, rather than under a "substantive due process" approach.

490 U.S. at 395 (emphasis in original). Accordingly, because Plaintiff was pepper sprayed in the course of being arrested, all excessive force claims relating to the pepper spraying incident must be analyzed under the Fourth Amendment. *Id.* For this reason, Plaintiff's substantive due process claim is meritless and Defendant Wilson is granted summary judgment on this issue.

**2. Equal Protection Claim**

In his Complaint, Plaintiff alleges Defendants denied him "the right to the equal protection of the laws, secured by the Fourteenth Amendment to the Constitution of the United States." (Ct. Rec. 1 ¶ XXI(e).) The substance of this claim was clarified in Plaintiff's response to Defendant Wilson's Motion when Plaintiff expressed his belief that he was arrested and prosecuted due to his Native American heritage, when Mr. Lunde and Ms. Garcia, who are not Native Americans, were not issued citations.

Under the Equal Protection Clause of the Fourteenth Amendment, "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of law." U.S. CONST. amend. XIV. Equal protection claims usually challenge laws and/or policies that are believed to have adverse

discriminatory purposes and/or effects on particular classes of people. To establish a equal protection claim, a plaintiff must be able to prove he or she was treated differently than a similarly situated person because of a protected characteristic the plaintiff did not share with the similarly situation person. *Lawrence v. Texas*, 539 U.S. 558, 579 (2003) ("The Equal Protection Clause of the Fourteenth Amendment 'is essentially a direction that all persons similarly situated should be treated alike.'"). Here, Plaintiff focuses on the fact that he, a Native American, was issued citations and prosecuted, but Mr. Lunde and Ms. Garcia, who are not Native Americans, were not prosecuted, even though they were arrested in the same alley on the same night Plaintiff was arrested.

Under the factual allegations set forth by Plaintiff, the Court concludes Plaintiff is unable to demonstrate his constitutional rights under the Equal Protection Clause were violated.  Plaintiff is unable prove he was treated differently than similarly situated individuals. Because Mr. Lunde and Ms. Garcia were arrested for vastly different reasons than Plaintiff (harassment and reckless driving), Defendants' treatment and ultimate decisions to not issue citations to these individuals are not comparable to Defendant Wilson's decision to issue a citation to Plaintiff for obstruction and resisting arrest.  Because Plaintiff failed to submit any evidence to show he was treated differently than any similarly situated person, he is unable prove his rights under the Equal Protection Clause were violated.  For this reason, Defendant Wilson is granted qualified immunity on this claim.

///

ORDER ~ 29

**G. State Law Claims**

    **1. False Arrest & False Imprisonment Claims**

      "The gist of an action for false arrest or false imprisonment is the unlawful violation of a person's right of personal liberty or the restraint of that person without legal authority[.]" *Bender v. City of Seattle*, 99 Wash. 2d 582, 591 (1983). "[P]robable cause is a complete defense to an action for false arrest and imprisonment." *Hanson v. City of Snohomish*, 121 Wash. 2d 552, 563-64 (1993) (citing *Bender*, 99 Wash. 2d at 592).

      In his motion, Defendant Wilson urges the Court to find probable cause existed for him to arrest and detain Plaintiff and upon such a finding, to grant Defendant Wilson summary judgment on Plaintiff's state false arrest and false imprisonment claims. For the same reasons explained above with regard to Plaintiff's Fourth Amendment unlawful arrest claim, the Court finds a material issue of fact exists regarding whether Defendant Wilson had probable cause to arrest and detain Plaintiff. Accordingly, this portion of Defendant Wilson's Motion is denied.

    **2. Malicious Prosecution Claim**

      To succeed on a claim for malicious prosecution in Washington, the plaintiff must allege and prove the following:

> (1) that the prosecution claimed to have been malicious was instituted or continued by the defendant; (2) that there was want of probable cause for the institution or continuation of the prosecution; (3) that the proceedings were instituted or continued through malice; (4) that the proceedings terminated on the merits in favor of the plaintiff, or were abandoned; and (5) that the plaintiff suffered injury or damage as a result of the prosecution.

*Bender v. City of Seattle*, 99 Wash. 2d 582, 593 (1983) (quoting *Gem Trading Co. v. Cudahy Corp.*, 92 Wash. 2d 956, 962-63 (1979) (citation omitted)).

In his Motion, Defendant challenges Plaintiff's malicious prosecution claim, in part, by asserting no evidence exists to support a finding that Defendant Wilson instituted Plaintiff's criminal proceedings "though malice." (Ct. Rec. 14 at 31.) Plaintiff responds to this argument by simply stating that the factual issue of whether malice existed should be submitted to jury. (Ct. Rec. 29 at 17.)

The burden of proving malice in a malicious prosecution case rests with the plaintiff. *Bender*, 99 Wash. 2d at 593 (citation omitted). As used in the context of a malicious prosecution claim, the term

> [m]alice . . . has a broader significance than that which is applied to it in ordinary parlance. The word "malice" may simply denote ill will, spite, personal hatred, or vindictive motives according to the popular conception, but in its legal significance it includes something more. It takes on a more general meaning, so that the *requirement that malice be shown as part of the plaintiff's case in an action for malicious prosecution may be satisfied by proving that the prosecution complained of was under taken from improper or wrongful motives or in reckless disregard of the rights of the plaintiff.* Impropriety of motive may be established in cases of this sort by proof that the defendant instituted the criminal proceedings against the plaintiff: (1) without believing him to be guilty, or (2) primarily because of hostility or ill will towards him, or (3) for the purpose of obtaining a private advantage as against him.

*Id.* at 594 (citations omitted).

In this instance, Plaintiff offers no evidence to support a finding that Defendant Wilson issued Plaintiff's obstruction and resisting arrest citation for malicious reasons. Instead, as noted above, Plaintiff merely asserts that the element of malice should be submitted to the jury. For this reason, Plaintiff has failed to meet his burden under

1  *Celotex Corp.*, 477 U.S. at 322-23, of showing the existence of a material

2  issue of fact with regard to the third required element of his malicious

3  prosecution claim.  Accordingly, because Plaintiff has not established

4  a *prima facie* case of malicious prosecution and the Court finds no

5  evidence in the record to support one, Defendant Wilson is entitled to

6  judgment as a matter of law on this claim.

7  **3. Unnecessary Violence/Battery Claim**

8  The final claim alleged in Plaintiff's Complaint is that his state

9  "right not to have unnecessary violence or excessive force used in

10 accomplishing his arrest" was violated. (Ct. Rec. 1 ¶ XXII(d).)  In his

11 Motion, Defendant Wilson seeks summary judgment on this claim on the

12 ground that no such tort exists under the laws of Washington. (Ct. Rec.

13 14 at 32.)  In his response to Defendant Wilson's Motion, Plaintiff

14 clarifies that this claim is simply an allegation of battery. (Ct. Rec.

15 29 at 16.)  Because the statute of limitations for bringing a battery

16 claim is two years and this case was filed more than two years after the

17 alleged battery, Plaintiff's unnecessary violence/battery claim is

18 untimely. *See* R.C.W. § 4.16.100(1); *Boyles v. City of Kennewick*, 62 Wash.

19 App. 174, 176 (1991).  For this reason, both Defendants are granted

20 summary judgment on Plaintiff's unnecessary violence/battery claim.

21 **H. Punitive Damages**

22 "[A] jury may be permitted to assess punitive damages in an action

23 under § 1983 when the defendant's conduct is shown to be motivated by

24 evil motive or intent, or when it involves reckless or callous

25 indifference to the federally protected rights of others." *Smith v. Wade*,

26 461 U.S. 30, 56 (1983).  Defendant Wilson moves the Court for summary

ORDER ~ 32

judgment on Plaintiff's punitive damages claim upon a finding that no evidence exists to support punitive damages under *Smith*. (Ct. Rec. 14 at 28.)  In response, Plaintiff asserts that whether Defendant Wilson "acted with 'evil motive or intent' is a question for the jury" and that Defendant Wilson has not shown he is entitled to summary judgment on Plaintiff's punitive damages claim. (Ct. Rec. 29 at 15.)

If the jury were to find Defendant Wilson had no reason to pepper spray Plaintiff, i.e. the spraying was unprovoked, and/or there was no reasonable explanation for why Plaintiff's eyes were not flushed at the scene, the Court believes the *Smith* standard for proving punitive damages could be met by Plaintiff.  Accordingly, the issue of whether Plaintiff is entitled to punitive damages is left for the jury to determine and this portion of Defendant Wilson's Motion is denied.

Accordingly, **IT IS HEREBY ORDERED:** Defendant Wilson's Motion for Summary Judgment Re: Qualified Immunity **(Ct. Rec. 14)** is **GRANTED IN PART** (qualified immunity granted on Plaintiff's substantive due process and equal protection claims; summary judgment granted on Plaintiff's malicious prosecution and battery claims) and **DENIED IN PART** (qualified immunity not granted on Plaintiff's right to be informed, unlawful arrest, or excessive use of force claims; summary judgment not granted on Plaintiff's false arrest, false imprisonment, or punitive damage claims).

///
///
///
///

ORDER ~ 33

1        **IT IS SO ORDERED.**  The District Court Executive is directed to enter

2   this Order and provide a copy to counsel.

3        **DATED** this  8th    day of August 2006.

4

5                          S/ Edward F. Shea
                          _____
                          EDWARD F. SHEA
6                    United States District Judge

7

    Q:\Civil\2004\0414.MSJ.wpd
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER ~ 34